NOT DESIGNATED FOR PUBLICATION

No. 119,336

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MIGUEL ANGEL PEREZ,
*Appellant*.

MEMORANDUM OPINION

Appeal from Ford District Court; VAN Z. HAMPTON, judge. Opinion filed April 19, 2019. Affirmed.

*Peter J. Antosh*, of Garcia & Antosh, LLP, of Dodge City, for appellant.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, P.J., PIERRON, J., and MCANANY, S.J.

PER CURIAM: Before trial, Miguel Angel Perez moved to discharge the jury venire for systematic underrepresentation of Hispanics in jury venires in Ford County. The district court denied the motion. Perez appeals.

FACTS

On July 10, 2017, the State charged Perez with driving under the influence of alcohol (DUI) 4th or more; driving with a suspended license; circumventing the ignition

1

interlock device; transporting an open container; and failing to signal before turning. Perez waived his preliminary hearing, proceeded directly to arraignment, and the case was set for pretrial and jury trial.

Four days before the jury trial, Perez filed a preemptive four-part motion, requesting (1) to discharge the jury venire; (2) a hearing on venire selection; (3) a continuance without a speedy trial waiver; and (4) to seal the motions.

Perez asserted that the Sixth Amendment to the United States Constitution required the jury venire be drawn from a source that is fairly representative of the community and that Hispanics were systematically underrepresented in jury venires in Ford County. Perez provided the 2000 and 2010 United States Censuses showing Hispanics constituted 37.7% and 51.2%, respectively, of the Ford County population. However, in defense counsel's jury trials from 2010 until 2017, only 12.7% of jury venirepersons were Hispanic. The jury questionnaires did not collect racial background information, so his calculations came from analysis of the jurors' surnames and, in some cases, first names.

Perez argued that the court must apply the test set forth in *Duren v. Missouri*, 439 U.S. 357, 364, 99 S. Ct. 664, 58 L. Ed. 2d 579 (1979), in which the Supreme Court established a three-prong test to determine if an illegitimate cross-section of the population comprising the jury venire violates a party's Sixth Amendment rights. Under *Duren*, the movant must show (1) the allegedly underrepresented group is a distinctive group in the community; (2) the representation of the group in venires is not fair and reasonable in relation to the number of such persons in the community; and (3) the underrepresentation is due to a systematic exclusion of the group in the jury selection process.

2

To satisfy the first prong, Perez cited *United States v. Shinault*, 147 F.3d 1266, 1271-72 (10th Cir. 1998), which states Hispanics are a distinctive group. The State did not dispute this point.

To satisfy the second prong of the *Duren* test, in which Perez had to show the underrepresentation of the Hispanics in jury venires compared to those in the community was not fair and reasonable, Perez provided the jury venires from 12 trials from July 2010 until May 2017. He asserted only 50 of the 395, or 12.7%, jurors had Hispanic-sounding names. Perez calculated the absolute disparity, as defined in *Shinault*, to be 38.5%. He argued that the *Duren* Court found a 39% disparity was improper and a violation of the Sixth Amendment. He contended that courts are reluctant to find a prima facie case when the absolute disparity is less than 10%, but Ford County was well beyond that.

To satisfy the third prong, Perez compared his data to that in *Duren*. In *Duren*, the United States Supreme Court found a systematic exclusion of women in jury venires with a showing that the discrepancy did not occur occasionally after counsel provided weekly jury venire data for nearly one year. Though Perez did not have weekly data, defense counsel collected data from his 12 jury trials over the seven-year period and argued it was a scientific sampling and expressed his doubt that his data was anomalous when compared to all juries in that timeframe. He asked the district court for a continuance to allow him time to better prepare and collect data on this constitutional concern.

The district court denied Perez's motions. The court agreed that the first prong was satisfied. For the second prong, the court noted that the 2000 and 2010 censuses counted residents of Ford County, but a qualified jury member must be a citizen of the United States. The court pointed out that Hispanics are the largest local group of people who may not be citizens, as many have work visas or are undocumented. The court explained that the jury system randomly pulled names from driver's license records and voter

3

registration and so it could not be unreasonable or unfair but a consequence of the qualification requirements.

Regarding the third prong, the district court found it required an act by the government for it to be systematic. The court explained that there was no process by which the system could exclude a group unless somebody physically pulled the returned jury questionnaires. The district court agreed that any time an underrepresentation is identified, there is cause for concern, but that alone does not automatically discharge the jury absent a showing of systematic exclusion.

The jury found Perez guilty of all counts. The district court sentenced him to 12 months in the county jail with 12 months of post-imprisonment supervision. The court granted Perez 271 days of jail credit. The court ran the terms of confinement for counts two through four concurrent with count one and fined him $200 each for driving with a suspended license, circumventing the ignition interlock device, and transporting an open container. The court also fined him $25 for failing to use his turn signal.

LEGAL ANALYSIS

On appeal, Perez argues that he met his burden of making a prima facie showing of a continuing trend of underrepresentation of Hispanics in jury venires in Ford County. He asserts his claims satisfied the three-factor test set out in the U.S. Supreme Court case, *Duren*, 439 U.S. at 364, and the district court should have given him the opportunity to explore the root cause of the racial disparity. He asks us to reverse the district court's findings and remand the case for an evidentiary hearing on the matter.

*Standard of Review*

Perez argues that resolution of his argument involves a mixed question of fact and law. When reviewing a mixed question of fact and law, an appellate court applies a

4

bifurcated review standard. We generally review the district court's factual findings under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. *State v. Miller*, 293 Kan. 535, 547, 264 P.3d 461 (2011).

The State, however, claims we must use the negative factual finding standard. Perez moved for discharge of the jury venire, under K.S.A. 22-3407, which imposes an affirmative duty on the movant to show improper selection in the jury venire. The district court's finding that Perez did not meet his burden was a negative factual finding. When reviewing a negative factual finding, the appellate court must consider whether the district court arbitrarily disregarded undisputed evidence or relied on some extrinsic consideration such as bias, passion, or prejudice to reach its decision. *State v. Smith*, 303 Kan. 673, 679, 366 P.3d 226 (2016).

We need not decide which position is correct, because under both standards, the result is the same.

*The Exclusion of Jurors on the Basis of Race or National Origin*

Under the Sixth Amendment, in criminal prosecutions, "the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed." According to the K.S.A. 43-155, it is the public policy of the State of Kansas "that jury service is the solemn obligation of all qualified citizens." Jurors must "be a citizen of the state, resident of the county and possess the qualifications of an elector," and potential jurors cannot be excluded from service "on account of race, color, religion, sex, national origin, or economic status." K.S.A. 43-156. The United States Supreme Court has determined a jury selection system violates the right to an impartial jury if the system does not draw its jury venirepersons from a fair cross section of the community. *Duren*, 439 U.S. at 364. Taylor *v. Louisiana*, 419 U.S. 522, 529-30, 95 S. Ct. 692, 42 L. Ed. 2d 690 (1975).

5

"In order to establish a prima facie violation of the fair-cross-section requirement, the defendant must show (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Duren*, 439 U.S. at 364.

The parties agree that the first prong of the test has been met. Hispanics are a distinctive group in the community. Instead, the State contests Perez' claim to have satisfied the second and third prongs.

*Whether Representation of Hispanics Is Fair and Reasonable in Relation to the Number of Hispanics in the Community.*

Perez correctly asserts that the Sixth Amendment to the United States Constitution required the jury venire be drawn from a source that is fairly representative of the community. To support his assertion that they were not, Perez submitted the 2000 and 2010 U.S. Censuses to show Hispanics constituted 37.7% and 51.2% of the Ford County residents, respectively. From the growth trend, he estimated the Hispanic population by 2018 would have been at least 55%. Perez then provided 12 jury venires from July 8, 2010, through May 25, 2017, cases defense counsel had been involved in, and provided them as a sampling of venires in that timeframe. He determined, based on Hispanic sounding names, Hispanics made up 50 out of 395 jurors or about 12.7% of the Ford County jury venires. He calculated the absolute disparity, as defined in *Shinault*, 147 F.3d at 1271-72, to be 38.5%. From that, he determined the comparative disparity, which measures the decreased likelihood Hispanics would be called for jury service, was 75.2%. He asserted that a 10% absolute disparity is generally a prima facie threshold in demonstrating a Sixth Amendment violation.

6

The district court considered Perez's analysis, noting that Hispanics were the largest group in the area who are likely noncitizens. Jury duty requires citizenship, while the censuses consider only residency. The court noted that even if resident noncitizens received jury questionnaires, they would not be summoned as part of the venire. The court found that though his calculations showed an underrepresentation, it would be difficult to prove the actual numbers, which would show a disparity based on juror qualifications. Thus, the court held that the underrepresentation was neither unfair nor unreasonable based on the evidence before the court at that time.

The question is not simply whether disparity exists, but also whether the disparity is unfair or unreasonable. In *Duren*, the defendant presented weekly jury venires for nearly a year to show the underrepresentation of women in the venires was consistent. 439 U.S. at 362. Perez presents only 12 venires from a 7-year period with no explanation of how many venires had been created in that time or how his evidence shows consistency of the underrepresentation. He doubts that those 12 venires were anomalies but provides nothing to support that assertion.

The Kansas Legislature also requires that jurors be citizens of the state, residents of the county, and qualified as an elector. Although the 2010 U.S. Census provided ethnicity and residence, it did not provide citizenship of the residents. Perez does not suggest what percentage of the population could qualify as venirepersons. The district court pointed out that the jury venire resulted from jury questionnaires returned and Perez failed to present any evidence about a difference between questionnaires sent out and those returned or those returned with hardship requests granted.

Though Perez' evidence suggests a large disparity, he provided no concrete numbers proving the disparity or how such disparity would be unfair or unreasonable. A sampling of only 12 select venires over a 7-year period with nothing more is not sufficient. The district court properly determined that Perez did not satisfy the second

7

prong of the *Duren* test because he failed to show the underrepresentation of Hispanics in the jury venires was unfair or unreasonable in relation to the number of Hispanics in the community.

*Whether the Underreperesentation Was Due to Systematic Exclusion of Hispanics.*

Perez claims the high absolute disparity, which he admits stems only from venires from his defense counsel's cases over the previous seven years, suggests a systematic exclusion, but he needed more time to discover the cause of the disparity. He claims that the district court improperly concluded that an intent to exclude Hispanics from jury pools was a necessary element for him to establish this prong. To the contrary, he asserts than an inference is all that is necessary.

He cites *United States v. Test*, 550 F.2d 577 (10th Cir. 1976) in support of this argument. There, the court discussed the two types of United States Supreme Court cases in which arguments had succeeded on inference of systematic exclusion. The first type of cases are the "rule of exclusion" cases, in which the distinctive group had been totally excluded from jury service or had only "token representation" over a substantial period. 550 F.2d at 586. The second type of cases presented a "substantial underrepresentation" of a distinctive group, in which the various stages of the selection process provided "obvious opportunities for discrimination." 550 F.2d at 586.

Though he does not specify which type of *Test* case this would be, it appears Perez classifies this as a "rule of exclusion" case that with further investigation could become a "substantial underrepresentation" case. However, if he classifies this as a "rule of exclusion" case, Perez' evidence falls short of a sufficient showing as demonstrated in the second prong. His calculated absolute disparity does not necessarily show a systematic exclusion. If he classifies this as a "substantial underrepresentation" case, he fails as he has presented no evidence of opportunities for discrimination in the jury selection process.

8

Moreover, we believe Perez improperly concluded that the district court inferred an intent requirement as the court only determined a systematic exclusion requires an act by the government, not an exclusion intent. For example, in *Castaneda v. Partida*, 430 U.S. 482, 493-94, 97 S. Ct. 1272, 51 L. Ed. 2d 498 (1977), the Supreme Court used a test similar to that in *Duren* but found the systematic exclusion prong required a showing of a "*selection procedure* that is susceptible of abuse or is not racially neutral." (Emphasis added). And in *Berghuis v. Smith*, 559 U.S. 314, 332, 130 S. Ct. 1382, 176 L. Ed. 2d 249 (2010), Smith provided a list of possible factors contributing to the underrepresentation of African-Americans in jury venires to show systematic exclusion. The Court rejected his claim and found "[n]o 'clearly established' precedent of this Court support[ed] Smith's claim that he can make out a prima facie case merely by pointing to a host of factors that, individually or in combination, *might* contribute to a group's underrepresentation." 559 U.S. at 332.

Kansas jury venires are "prepared from voter registration records of the county, lists of licensed drivers residing in the county or enumeration or census records for the county, in accordance with the intent and purposes of [the Petit and Grand Jurors Act of 1971]." K.S.A. 43-162. The Kansas Supreme Court has determined that the use of voter registrations and driver's license records to generate jury venires is constitutional as it only excludes those who cannot or choose not to partake in such activities. *State v. Ji*, 251 Kan. 3, 7, 832 P.2d 1176 (1992). That excludes no distinct group in the community and so creates no constitutional concern. 251 Kan. at 7.

Perez' claim of systematic exclusion as required by the third prong of the *Duren* test is based solely on the numbers, rather than the system. He claims the system must be the cause without suggesting how such a systematic exclusion would be possible. Perez' assertion falls short of the list provided in *Berghuis*, as he does not even offer up factors to consider. He only requests additional time to research the issue, which should have

9

been completed prior to the motions hearing. He has failed to present a prima facie case for a Sixth Amendment violation, although the number of Hispanics serving on juries is quite suspicious.

Affirmed.